## UNITED STATES DISTRICT COURT.

### IN THE MATTER OF CURTIS JUDSON, A BANKRUPT.

Where a bankrupt is under examination before a register, he has no right to consult with his attorney or counsel before answering, except the register shall see good cause for allowing it.

*Southern District of New York, March,* 1868.

IN an examination of the above named bankrupt, upon the application of Thomas Hope, a creditor, under section 26 of the bankrupt act, general orders, rule 10 :

This quertion has arisen, and the same is certified to his honor, Judge BLATCHFORD, with the facts. The counsel for the creditor propounds a question to the bankrupt under examination, and requires a direct answer. The counsel for the bankrupt claims the right to counsel with and to prepare and answer for the bankrupt, before he answers the question. To this the counsel for the creditor objects, and claims that the bankrupt is a witness, and must be examined as a witness, subject to the same rules and privileges as other witnesses.

This brings up the question: Can a bankrupt, during his examination, consult counsel, and have his advice as to the answer to be given, or have the answer framed for him by his counsel, or can he, while on the stand as a witness, advise with or consult his counsel as to his answer ?

In the state courts in this state, in examination under supplementary proceedings, a practice has grown up of allowing the person so examined to have counsel. The case of *Levey* agt. *Halsey* (1 *Duer*, 589), also reported in 1 *Code R., N. S.,*

275, is cited as an authority for such practice, but the decision in that case does not authorize any such practice.

By the act of congress, July 16, 1862, it is the practice of the U. S. district courts to follow the rules of the respective state courts in regard to all questions of evidence, and the examination of witnesses. Since the act of July 16th, 1862, parties to the action or proceedings are also witnesses.

The examination of a party to an action or proceeding is a recent innovation upon the common law. In this state, in the year 1818, an act was passed authorizing the examination of a plaintiff as a witness, in certain cases; again, in the year 1820, making plaintiffs competent as witnesses in certain cases. In 1835, an act was passed whereby, in suits on bills of exchange and promissory notes, the plaintiff was entitled to the testimony of any defendant as a witness. A defendant was also entitled to the testimony of any co-defendant as a witness. In 1850, the act relating to the loss of baggage in railroads was passed, whereby the plaintiff, in an action for the loss of baggage, could be a witness and prove the loss of the articles, &c., &c.

The passage of the act of 1847, authorizing the examination as a witness of the parties to the action, sections 1, 2 and 3 were as follows:

"An act to authorize parties in civil suits, at their election, to obtain the testimony of the adverse party;" passed 1847, chapter 462, page 630.

"§ 1. Any party in any civil suit or proceeding, either in law or equity, had before any court or officer, may require any adverse party, whether complainant, plaintiff, petitioner or defendant, or any one of said adverse party, any and every person who is beneficially interested in said suit or proceedings, though not nominally a party, to give testimony under oath in such suit or proceeding; and such adverse party may be examined orally, or under a commission, in the same manner as persons not parties to such suit or proceeding, and

who are competent witnesses therein; and such parties may be subpœnaed and his attendance as a witness compelled, or he may be examined by a commission, or conditionally, or his testimony perpetuated in the same manner as any competent witness.

" § 2. The court or officer before whom such suit or proceeding may be had shall have power to dismiss the bill, petition or proceeding of any party, or any part thereof, with costs, or nonsuit any party, or strike out or disregard any defense, or any part thereof, of any party who shall refuse to testify.

" § 3. Any party in any suit or proceeding as aforesaid shall be required, to entitle him to examine the adverse party as a witness in any such suit or proceeding, to summon such adverse party to attend the trial or hearing in such suit or proceeding, to give testimony therein, in the same manner as the attendance of witnesses in ordinary cases."

The act of congress, July 16th, 1862, provides:

"That the laws of the state in which the court shall be held shall be the rules of ———— as to the competency of witnesses in the court of the United States."

The wife of a party to the action, although a party to the suit, could not be compelled to testify as a witness by the defendant by the state law (5 *Barb.* 156); but by the act of May 10, 1866, she now can be, and under the bankrupt act she can be subpœnaed as a witness, and unless she testifies as per section 26 of the bankrupt act, the husband cannot be discharged.

In 1849, the Code of Procedure was enacted. By section 292, a judgment debtor could be examined in the same manner as any other witness by that act; the examination of a party was the same as the examination of a witness. Same by all the previous statutes.

By a careful perusal of section 26 of the bankrupt law, the act of this state, 1847, sections 1, 2 and 3, and of section 292 of the Code, it is fair to infer that section 26 of the

bankrupt law, as well as general orders in bankruptcy, rule 10, were founded upon the act of New York, 1847, and the Code, section 292. Consequently the same rules as to the taking of the testimony of parties to an action or proceeding should govern the examination of witnesses in the United States district courts. The bankrupt is examined as a witness at the instance of the creditor, who is the adverse party.

The examination of a bankrupt is an examination in open court, upon the trial of the cause, and must of necessity be an oral examination; and it is in the discretion of the court to allow the bankrupt counsel on an examination, even the counsel of record in the cause. (*Peabody* agt. *Harman*, 3 *Gray*, 113.)

I hold that the bankrupt must be examined as a witness, the same in all respects as if examined as a witness in any cause on trial in the district court. Counsel may raise any objection, or take any exceptions, the same as at a trial in the district court. But the witness, be he the bankrupt or any other witness, cannot during such examination consult with counsel, or receive advice or suggestions from any person.

The counsel for the bankrupt should be allowed to examine him as to any matter pertinent to his examination by the creditor (1 *New York Legal Observer*, 119), or as to any matter set forth in the schedules.

Bankrupts are unwilling witnesses. Their examination should be full, fair and searching, not irrelevant (*Ex parte Legge*, 17 *Jurist*, 415); should relate to all matters tending to show the bankrupt to have property other than that mentioned in the schedules. (*Page* 20 *Manual of the U. S. Bankrupt Act, and the cases there cited;* 1 *Duer*, 589.) He must answer all questions touching or concerning his property, or any question tending to show he has property, interest in property, or rights in action, not mentioned in his schedules, as required by the bankrupt act and rules therein. The

schedules are his direct examination, and his examination by the assignee or creditor is a cross-examination.

In this case the bankrupt is attended by two good lawyers, who claim the right to consult the bankrupt as to his answers, and to frame them for him, and cite the *Patterson case. (Internal Revenue Record, vol.* 6, *p.* 165; 1 *Duer,* 589, *and Law Rep.* 514.) Register Dwight held: "That in his opinion the bankrupt should have the privilege of consulting with his counsel while under examination, provided that such consultation does not cause delay in the proceedings." And the judge held: "Within the limits above stated by the register, that is, to the extent of allowing to the bankrupt the privilege of consulting with his counsel while under examination, provided such consultation does not cause delay in the proceedings, the register is the proper judge of the propriety of allowing to the bankrupt such privileges, and the court will not interfere with the exercise of such discretion in ordinary cases."

In this case I hold that the counsel's consultations with the bankrupt during the examination, and also in part preparing the answer of the bankrupt in this cause, does cause delay in the proceedings, also hinders and impedes the proceedings, causing much delay, but not more so than consultations with counsel and the preparation of answers necessarily require. To the courts allowing counsel to the bankrupt on his examination, counsel for the creditor is strenuously opposed, citing 3 *Gray,* 113, as authority to the contrary, and it is evident that if the bankrupt can have counsel to prepare his answers to the questions asked him, the examination must be greatly impeded and the examination prolonged to an intolerable length, the examination of the bankrupt becomes the examination of his counsel, which would at once defeat the intention of the law and render the examination of a bankrupt under section 26 of the bankrupt act a mere farce. Some rule should be adopted whereby the rights of a bankrupt under examination should be defined

and definitely settled, and the way in which a bankrupt should be examined minutely specified.

In this case I hold the examination of the bankrupt under section 26 of the act and general orders, rule 10, shall be conducted in all respects before me at the chambers of this court, as if the cause was in progress of trial before the judge of the district court.

That the bankrupt, Curtis Judson, must take the stand as a witness, must answer the questions without advice or consultation with any person while on the stand as such witness. And that the bankrupt cannot consult with his counsel, or with any one, while on the stand as a witness, as to the way or manner he shall answer the questions put to him.

Since writing the above decision, I have seen the opinion of Judge LOWELL, United States district court, Mass., in the *matter of Edward P. Tanner.* The court held that a bankrupt under examination has no right to consult with his counsel except when the magistrate before whom the examination is conducted has good cause for allowing it. (Vol. 1 *Bankrupt Register*, p. 59.) His opinion is very full and covers the point taken in this case by the counsel for the bankrupt.

The counsel for the bankrupt except to the ruling of the register, and ask that the same be certified to your honor. Respectfully submitted.

JOHN FITCH, *Register.*

BLATCHFORD, J. I have carefully examined the decision of Judge LOWELL in the case of *Tanner* and concur fully in his views in all respects as there expressed.

The clerk will certify this decision to the register, John Fitch, Esq.—March 11, 1868.

The following is the opinion of Judge LOWELL above referred to:

LOWELL, J. The register, by agreement of the parties,

Matter of Judson.

has certified the question whether a bankrupt, upon his examination under section 26, has a right to answer by the mouth of his attorney. The law at section 26 provides for an examination of the bankrupt in writing, as to all matters concerning his trade dealings, debts, property, &c. It is plain, upon the whole tenor of the section, that the examination may be had before the court or before a register, and that the debtor is to be personally present, and to make answer substantially like a witness, and not merely to have interrogatories filed or propounded after the manner adopted in equity and admiralty in certain cases. Whether the requirement that it shall be in writing, means that the questions shall always be in writing, if required by either party I do not now decide, but I do not think it is intended that the bankrupt himself or his attorney shall write the answers, but merely that the deposition shall be reduced to writing and signed by the bankrupt.

Since the examination may extend to the bankrupt's whole business life, and may involve large interests of himself and his family, and of other persons who have dealt with him, he should have every proper facility for refreshing his recollection and for making true and careful answers. He may need to consult books and papers, and sometimes, no doubt, to consult counsel, but it seems to me impossible to lay down any general or peremptory rule of law governing such consultations.

In an early case under the insolvent law of Massachusetts, the supreme judicial court is said to have held that the insolvent is absolutely entitled to this privilege. The case is very briefly reported, and without reasons given, but it has been accepted and acted upon ever since. (*Ex parte Windsor* 8 *Law Reporter.*) The practice which has followed this adjudication has been, as I believe the bar will generally concede, unfavorable to the ascertainment of the truth in these investigations, by reason of the great labor and delay of proceeding in that mode, and there is some reason to be-

lieve that if the question were new, the same court might now decide it differently; for, in *Peabody* agt. *Harmon* (3 *Gray*, 113,) they refused this privilege to a creditor under examination in support of his debt, and many of the reasons for the decision apply with great force to all examinations; and the rule there laid down, that such matters must be left to the judgment of the examining magistrate, appears to me to be of general application. It is not to be supposed that a register will deny the bankrupt, or a witness, such reasonable opportunity to see his books and papers, and to consult concerning his rights, as will enable him to answer understandingly, and with all proper reservations, the questions that may be asked him. In England, Lord Chancellor HARD-WICKE refused to make a peremptory order in a similar case, but recommended that the petitioner (a woman) should be allowed the privilege. (*Ex parte Parsons*, 1 *Atk*. 204, *and see Ex parte Bland, Id.* 205.) And such appears to have remained the rule of practice there. (1 *Christian Bankruptcy Law*, 385, 1 *Mont. and Ayrt. B. L.* 385, 2d *Ed.*) I do not say that on a motion to commit for not answering, or in some other mode, the judgment of the register might not, in some cases be received; but that there is no general rule of law to be laid down upon the subject, and that, as a matter of practice, it is highly inconvenient that one should be adopted which should tend to mischievous delay without any corresponding advantage. The questions to a bankrupt are usually concerning matters of fact, and, in the vast majority of cases, involve nothing requiring advice or consultation; and the presence of counsel with the right to object to improper questions, and to uphold the rights of the bankrupt in substantially the same manner that he would do if his client were called on the stand as a witness in his own cause in any other court, and with the further reserved right to advise with him concerning his answers, when the register can see cause therefor, meets, as it seems to me, all the requirements of justice in this regard.